UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| BEGASHAW AYELE, <u>PRO SE.</u>  )  <br>  ) <br> Plaintiff ) <br>  ) <br> vs ) <br>  ) CIV. ACTION NO. 04cv12217PBS <br> COGNSIA SECURITY CO. INC ) <br>  ) <br> Defendant ) <br>  ) | |

## PLAINTIFF'S POSITION STATEMENT

**INTRODUCTION**

Plaintiff submitted this position statement for the purpose of Alternate Dispute Resolution discussion per order of the court of April 25, 2005. In submitting this position statement, plaintiff must say that I have prepared the position statement from the disadvantaged position as I have <u>not</u> discovered several information from the defendant by means of deposition or adequate discovery response.

As an initial matter, the court's order to prepare and submit the parties position statement was erroneously issued to another case (<u>Civil Action No. 01-12175 MLW)</u> and did not received by plaintiff until after the judge's clerk corrected the captioned case and sent to the parties. By this time, defendant had already taken deposition from plaintiff and received all responsive documents for the request of production of documents and answers to the interrogatories. Plaintiff, however, is **NOT** in similar position to that of the defendant because (1) plaintiff and counsel were discussing further how and when I was about to take deposition by tape recorder from the company's representative and (2) the discovery

1

response plaintiff received from defendant company were not clarified by further testimony as plaintiff's Interrogatories were answered by defendant in an evasive and confusing manner thus causing plaintiff's position statement to such a limited degree. For the purpose of settlement discussion, however, I have prepared the following statements based on *my personal knowledge of the fact, as well as from the defendant's response to the plaintiff's charge of discrimination before the EEOC as follows:*

## STATEMENT OF THE CASE

1. On November 20, 2003 and December 10, 2003, see EXHIBIT **C, D** and **E** .Plaintiff submitted employment application to defendant Cognsia Security Co., Inc. After completed the initial employment application and submitted together with my resume,*** 1/ I was immediately interviewed briefly by the Human Resource Manager, Nicole Downes. Subsequently I was promised a conditional offer of employment *subject to* completion of the second employment application at the corporate office, employment history verification, criminal background check and drug test. **EXHIBIT E** In my employment application completed at the corporate office (in addition to my conversation to Ms. Downes at the initial recruitment secession) I have indicated that I left my former employer, Pinkerton Security Co,. Inc. because of problem in my leg since childhood as well as chemical irritation in my eyes resulting from my hourly tour **EXHIBIT F** inside the Millenium Pharmaceutical lab which I worked in checking the temperature of frozen molecule kept in a refrigerator room of the client company in Cambridge, Massachusetts. Employer are well aware about my problem and just as much as they know criminal record, **EXHIBIT I** as the result of their contact **EXHIBIT G and H**, for drug Test **EXHIBIT J,** welfare status, if any **EXHIBIT K and L and** therefore, should have hired plaintiff had discrimination was not their practice.

2   Even before all the background check, employment verification and Drug Test wa completed Ms. Downes contacted me by phone and asked me if I could work from 8:00am-3:00p work shift rather than the 3:00pm-11:00pm work shift that I have indicated in application. I was in

agreement even though I always prefer the 3:00pm-11:00pm work shift because I can use the day time hours to do other things where private or public institutions conduct business. Per Ms. Downs recommendation, I have contacted the office administrator, Ms. Jennifer Rego and asked to complete the final application at the corporate office even though I have no any documentation at hand to put correctly of all information related to my employment application forms and related documents.

After completion of employment application, plaintiff made several phone contacts to the employer about the status of my application but all the response does not indicate to me that they were intend to offer me any employment. Among the many reasons given to me for not offering such a position was that they could not find suitable work site that can accommodate my problem without even making any effort to accommodate me. Besides,. when I ask *why* the other Spanish employee was hired who took the drug test with me, they told me because he is a bilingual. Being undiscouraged, plaintiff continue seeking employer's further action on my status but was ignored and, therefore, after 176 days later i.e. (4) days before the statute of limitation expired to bring charge with the commission, I have pressed employment discrimination on June 4, 2004, see **EXHIBIT B** at Plaintiff's Amended Complaint. The charge includes, among other things, discrimination on ground of race and national origin under 42 U.S.C. 2000e et. seq. or "Title VII" of the Civil Rights Act of 1964, as amended, perceived disability under the ADA Act of 1990, as amended.

---

*** 1/    *The job application and other related documents that I was given to complete at the corporate office has **not** been completed correctly but by approximation. In some instance, for example, while the form "**Applicant Residence Listing**" required candidates to list place of residence for the last five years, I only put my next current residence only. Even for that too, I put incorrect dates such as 09-10-96 to 2-3-01 Instead of 9/97-10/00. Similarly in my employment application I made some errors both of which are the result of memory loss and confusion due to my former employer's incorrect record keeping. Plaintiff had explained to the employer just as much as in my deposition recently to the defendant's counsel. All these inadvertent errors, however, should not be construed as employment falsification and if one assumed, it will not stand the decision of the U.S supreme court decision as explained in <u>McKennen vs. Nashville Banner Publishing Co. Inc.</u> 513 U.S. 525, 115 S. Ct. 879, 130 L. Ed. 852 (1995). The copy of this Memorandum of law has been submitted to defense counsel at the time of plaintiff's deposition so as to help not thinking the filing of motion for summary judgement. Plaintiff's preemptive argument is, therefore, for this purpose and for additional purpose – not to paper the court by such motion of summary judgement.*

## DEFENDANT'S POSITION AS ARGUED BEFORE THE
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Defendant Cognsia Security Co. Inc. submitted its position statement to the Federal Administrative Agency (or the EEOC) in its July 19, 2004 letter addressed to Mr. Rance A. Quinn of the commission as indicated at **EXHIBIT - A** and as **summarized by plaintiff** *** 2/ as follows:

1. Defendant repeatedly stated that plaintiff sought a work schedule from 3:00-pm-11:00pm, Monday - Saturdays (as first choice) or from 8:00am-3:00pm work shift but he preferred such work hours without sufficient notice to the employer as to his leg problem. Furthermore, as the majority work sites involve walking …etc, plaintiff had lacked the client's physical requirement at the R & D Associates or any other location that the employer may locate to him. Defendant further asserted that charging party "did not, however, indicated in the EEOC Data form that he was an individual with disability…. And did not indicate that he had a current disability or current issue with his leg. He did, however indicated in his work History portion of his application that he left his previous employer due to… problem in my leg   see **Id.** at  **¶ 1, pp. 1-2**

2. Cognsia Provide a valid reason for the charging party why a position was not located for him…. (but was searching one that did not require walking….) In this respect the company concluded that plaintiff was not discriminated on ground of his race, color (black) under 42 U.S.C. 200e et seq. "Title VII" of the Civil Rights Act of 1964 as amended, or perceived disability under the ADA laws. **Id. at ¶ 2, p. 3**

3. Cognsia did not discriminate charging party because the statistics proved that the company's practice was on lawful ground, **Id. At ¶ 3, p.3**

## ARGUMENT

1.  Plaintiff was systematically and/or deliberately denied employment opportunity by the employer since the statistics nor employment procedure they followed proved that they were in compliance of the statues that congress designed to protect employees from such type discrimination.

---

*** 2/   *Plaintiff summarized the three point of defendant's argument from its answer submitted to the Equal Employment Opportunity Commission "EEOC" as indicated above and can be referred as **EXHIBIT A** above. Defense counsels has not mentioned any of the issues nor presents the employer's answer in the deposition nor presented my letter of resignation from my former employer due to problems in my leg that Cognsia do not to addressed*

Further defendant argued that plaintiff's perceived disability was not the factor to deny employment but Cognsia's inability to locate suitable work site that accommodate his desire to work a non-walking job. In other and contradicting statement the employer attempted to deny plaintiff's assertion as to my leg problem by denying that *I did not indicated my perceived disability status in the Equal Employment Opportunity Data,* **EXHIBIT C** *but in the "Work History" portion of my application,* **EXHIBIT E,p.2.** This is very weak argument because, in the interview at the first conversation, I have informed, Ms. Downes that I have the problem in direct and in unequivocal term. Even if the HR manager deny, such denial will not be worthy of argument because the conclusion will be that the "employer has or constrictive knowledge as to my problem whether the knowledge is from the work history portion of the application or otherwise. **Id. at E. p2.**

Secondly, the employer in the EEOC proceeding attempted to justify its inability to locate a suitable work site for the plaintiff by limiting its search area only from two of their client companies (R &D Associate and Verizon Phone Company.) see **EXHIBIT A at p.2, lin2 2-3** These arguments must be rejected for the simplest two reasons including

(1) plaintiff has not applied only for two companies that the employer had a business contract but for <u>all</u> other companies which are under similar contract,

(1) that I was not limited my desire work shift to be 3:00pm – 11:00pm only but also as a second choice, from 8:00am-3:00pm as well and, therefore, the employer has been given greater latitude or flexibility for possible assignment. Moreover it is worth to note that the employer had hired 364 employees from November 20, 2003 to July 20, 2004 but in all these time employer never contemplate to assign me to any of the client companies that the employer had a contractual agreement. In this respect it can be concluded that plaintiff not only was excluded from such process of employment consideration but my request for accommodation would have been denied if employment for the plaintiff was extended by mistake or accident.

2. the second defense (or argument) advanced by the employer is that the company has not discriminated plaintiff in any way and, therefore, the claim was allegedly characterized as unworthy of credence. This can not be the case because the employer can *not* show that they had hired plaintiff in the first place nor had effectively addressed the issue of "perceived disability". The defendant's

5

argument further can be negated by the fact that not only that they can *not* show that they had accommodated any other disabled (or person with perceived disability) but also can *not* even show that they hired any Ethiopian national disabled or not, **EXHIBIT - Q**. What plaintiff was told is that I was not considered for the position, I am not bilingual and speak Spanish.**** 3/

    3     Finally, defendant attempt to assert that the employer has not discriminated against plaintiff because of the seemingly favorable statistical data that **EXHIBIT O, P, and Q** was prepared in support of its defense proved that they are in compliance with the Civil Rights Law. According to their statistics the company had hired 364 employees from the date plaintiff submitted employment application in November 2003 to July 2004. In this eight (8) months period, the number of minority employees hired was 122, that is, 33.5% of the total workforce employed. ****/ 4. See **Id. page 4, at ¶ 1** . Although parties has not argued the case in the administrative proceeding just as argument goes in similar proceeding like the federal court, defendant has also used statistics as core element to their defense. H owever, statistics is not a proper element in a *disparate treatment* case but on a disparate impact case as decided by the supreme court of the United States. Here, plaintiff claimed discrimination on individual case and eve not a class action that attract the attention of the court to review employer's practice from the data to drew inference as to the employer's alleged misconduct. Therefore, the defense of statistics is not applicable.

---

**** 3/  The term Bi and/or "bilingual" means of or in two languages. It also meant using or capable of using two languages especially with equal or nearly equal facility- see <u>Webster New World dictionary 3rd Ed. 1996</u> . In this respect employer can not mask discrimination because of one's inability to speak Spanish. Even though the majority of the public understand only bilingual means as "Spanish and English only", the term, however, is equally applicable to any other people, who in addition to English, speak any language other than Spanish. Plaintiff as an Ethiopian by national origin, had my own language that existed since biblical times as the bible mentioned Ethiopia, its culture and language 44 times. Therefore, not to hire plaintiff for reason of my inability to Spanish is a pure manifestation of pretext. This is true since Cognsia is the only company in the security business here in Boston which has no any employee of Ethiopian origin. The only employee plaintiff learned (after the defendant took deposition from plaintiff) is **Keleta Teweldeberhan** who, according to the information and belief, t he is an <u>Eritrean</u> not Ethiopia.

**** 4/  The information submitted by the employer as to the employees number to draw favorable statistics for defending the charge before the EEOC proceeding is in correct both in numerical count and legal analysis. In terms of number of total employees that employer indicated is not 364 but 350 and the percentage of the black employees is 34%. See **EXHIBIT - O** . In another documentary evidence produced to plaintiff's Request for production of Document No. 11 indicated that the total employees were 102 of which blacks amount to 40 and is 39.2%. see also EXHIBIT –Q Whatever data is used to analyze the percentile of minority members, the procedure is not applicable to the plaintiff's disparate treatment claim. Even the court took in to account such self made statistics, employer still can not over come the burden of proof since among the 364 or 350 employees, there is no single person hired from Ethiopia

## CONCLUSION

Plaintiff has genuine issue of fact deserve a jury trial. Defendant can not mask discrimination by any reason advanced so far. It can not say that they do not know or has any reason to know as to the plaintiff's leg problem especially after defense counsel had received the copy of my letter which I submitted to my former employer (Pinkerton Security Co. Inc) explaining the reason of my resignation was that because of my leg problem but that they did not accommodate my request to work in a conceriage type job. Furthermore, Cognisia can not prove that they had no sufficient time to locate suitable location for the plaintiff or assign me either for the 8:00am-4:00pm or 3:00pm-11pm work shift while in these eight months period, that they had hired 364 employees..

The defendant's argument and plaintiff's position looks like the following which the court should credit one over the other as Abraham Lincolin put it so eloquently one and half century ago:.

> If a man will stand up and assert, and repeat and reassert, that two and two do not make four, I know nothing in the power of argument that can stop him. I think I can answer the judge so long as he sticks to the premises, but when he flies from them, I can not work any argument into consistency of a mental gag and actually close his mouth with it.
> Speech at Peoria, Illinois, October 16, 1854

In this case, therefore, defendant can not say that they did not offered the job for the plaintiff nor denied the pre-employment information as to my inability to work in a constantly standing and/or walking position or denied that they have hired 364 employees by setting aside plaintiff's job application all for reason of my race, national origin and/or perceived disability in violation of the state or federal statutes. For purpose of settlement negotiation, however, plaintiff seek monetary value in the amount of _____***/5 without tax, in one check, payable within ten (10) days from the date of the agreement and, if agreement is reached such agreement should be treated as *arbitration* and will be binding with no rights to either party to proceed further.

---

***/5 *If settlement is feasible, plaintiff will explain to the mediator what the monetary value would be by showing the mathematical calculation during the discussion of the claim.*

Finally plaintiff state that the previously submitted Confidential <u>ex parte</u> settlement proposal to defense counsel is **null** and **void** and further state that if this discussion for Alternate Dispute Resolution does not resolve the dispute the case will be assigned to a Cambridge, Massachusetts based attorney due to my recent employment and time constraint as a result of this and other personal program.

Dated 5/10/05

Respectfully submitted,

Begashaw Ayele

## CERTIFICATE OF SERVICES

This certify that the foregoing document titled "PLAINTIFF'S POSITION STATEMENT" has been served on defendant's counsel by placing in the United States mail postage prepaid, to the following:

>Bronwyn L. Roberts
>Duane Morris PC,
>470 Atlantic Ave. Suite 500
>Boston, MA 02210

Dated 5/10/05

Sincerely,

Begashaw Ayele