# EXHIBIT B

Case 1:04-cv-12217-PBS    Document 28-3    Filed 06/15/2005    Page 1 of 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEGASHAW AYELE,

    Plaintiff,

v.

COGNISA SECURITY COMPANY, INC.,

    Defendant.

Civil Action No.: 04CV12217-PBS

## DECLARATION OF NICOLE DOWNES

1.

I, Nicole Downes, am of majority age, competent to testify and make this Declaration based on personal knowledge of facts I know to be true and correct.

2.

From February 2002 to July 2004, I was employed with Cognisa Security, Inc. ("Cognisa") as the Human Resources Manager in the Boston office. In July 2004, I resigned from Cognisa to pursue other career opportunities. As the Human Resources Manager, I was responsible for (among other duties) interviewing prospective candidates for security officer positions. I occasionally conducted job fairs to attract candidates for available positions.

3.

On November 20, 2003, I conducted a job fair at the Massachusetts Division of Career Services ("DCS") in Boston, seeking qualified candidates for a security officer position.

4.

On November 20, 2003, Begashaw Ayele approached me at the DCS and asked if he could interview with Cognisa. I agreed to interview Mr. Ayele and gave him a Cognisa employment application to complete. During the interview, Mr. Ayele informed me that he was seeking a position that was located near a public transportation depot, that required no work on Sundays, and that involved a shift schedule of 3:00 p.m. to 11:00 p.m. At the conclusion of the interview, I informed Mr. Ayele that Cognisa would contact him if any guarding positions were available within the parameters that he established.

5.

After interviewing Mr. Ayele, I learned of an open guarding assignment at R&D Associates ("R&D"), a Cognisa customer. The assignment was for the 3:00 p.m. to 11:00 p.m. shift. Believing that Mr. Ayele was a viable candidate for the position, on December 4, 2003, I contacted Mr. Ayele to offer him the assignment. Although the job appeared to be within the guidelines that he established, Mr. Ayele declined the offer, claiming that the geographic area in which the assignment was located had inadequate public transportation after 11:00 p.m. In response, I informed Mr. Ayele that I would continue searching for assignments for him.

6.

On December 9, 2003, I again contacted Mr. Ayele regarding another position at R&D, which was for the 8:00 a.m. to 3:00 p.m. shift. Because Mr. Ayele was interested in this position, I informed him that he needed to come to Cognisa's office to complete some additional pre-employment paperwork. On December 10, 2003, Mr. Ayele went to Cognisa's office, completed the requisite paperwork, and accepted the R&D assignment.

7.

On December 12, 2003, I contacted Mr. Ayele to discuss the details and job duties of his assignment at R&D, including the job duty of patrolling the R&D job site on foot. Mr. Ayele then stated, for the first time, that he did not want to work in any guarding position that required walking as a job duty, and he informed me that he was no longer interested in the R&D position. In response, I informed Mr. Ayele that I would continue searching for assignments for him but that jobs that did not require patrolling are very rare.

8.

Despite good faith efforts, Cognisa was unable to find an alternative assignment for Mr. Ayele within the parameters that he established. I did not perceive Mr. Ayele as disabled.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14 day of June, 2005.

_____
Nicole Downes