UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEGASHAW AYELE, PRO SE )
)
)
plaintiff )
Vs )
) CIV, ACTION NO, 04-12217PBS
COGNISA SECURITY, INC. )
)
Defendant )
)

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff for the above referenced civil action submit the following opposition to defendant's summary judgement motion on several grounds including defendant's **false** assertion as to the plaintiff's alleged acceptance of employment, the defendant's **false** assertion as to the absence of employment of any racial groups other than the plaintiff's and, the denial of employment for plaintiff for no other reason but discrimination. As this court will see from the following paragraphs, there are several disputed facts sufficient to raise genuine issues of material facts for trial. The plaintiff's opposition submitted at this time is without taking deposition from defendant or supplemented by other witnesses' testimony, and even without adequate discovery response from the defendant. With this in mind is how the court should read plaintiff's opposition to the defendant' motion for summary judgement.

For the reason stated above, therefore, plaintiff simply relies on documentary evidence available from the parties' submission of position statement to the EEOC as well as on plaintiff's

1

own deposition no matter how defense counsel had distorted as she pleased. All the facts drawn from all sources are titled as *Plaintiff's Undisputed Statement of Fact* and submitted together here below as follows:

## PLAINTIFF'S UNDISPUTED STATEMENT OF FACT

1. Plaintiff had the first contact with the employer, Cognsia Security Inc., on November 20, 2003 when I was in the office of the Massachusetts Division of Carrier Services where I search job in the Internet. At this time Cognisia had a job Fair where it recruit potential applicants for security guard job. I have completed the employment application with the employer and conditioned my employment to work in a concierge type job, with accessible public transportation areas and the work shift that could run from 3:00pm – 11:00pm, and the work days to be M-Sa., but not on Sundays, See Pltf's. Dep. At 118, or plaintiff's Affidavit at **EXHIBIT A**. of paragraph No. 3. Furthermore, on December 10, 2003 plaintiff met Jennifer Rego, Office Administrator, had showed her the copy of my letter of request for reasonable accommodation and my other letter of resignation from my former employer but preferred to call the employer and verify themselves and asked me to complete other pre-employment documents.

2. When I was interviewed by the then Human Resource Manager, Nicole Downes together with several candidates, I have unequivocally informed Ms. Downes that because of my leg problem, I have resigned from my former employers due to that employer's failure or inability to accommodate my request for a non-walking position. The plaintiff's reason for leaving my former employer is clearly indicated in my December 10, 2003 supplemental application, see **EXHIBIT - B** Also see the actual copy of my letters of request for reasonable accommodation

and letter of resignation at **EXHIBIT -C**

    3.    On or December 9, 2003, Cognisia contacted me by phone and asked me whether I was able to work at the R&D company - Cognsia's client located on the same building. Before entered the Cognsia's Human Resource Office on December 10, 2003, I was able to meet with Cognisia's employee of a Sudanese origin who perform that same job and clarify to me that he make an hourly tour of a ¼ of mile radius of the parking lot during at that Winter time. He also informed me that his white co-worker sit in the concierge desk, and greet gusts only but was not required to make a tour just as he does alone. As a result of this information and the fact that I have make it known that to the employer that I will not work such type of job, I met Jennifer and asked what type of job that the company is going to offer me. When I was informed that the job was adjacent to the Human Resource office and the work hours was 3:00pm – 11:00pm, I have rejected the offer outrightly as there is no public transportation after 11:00pm  Subsequent to that, in the afternoon of December 10, 2003, Ms. Downes offered me that same job except that the shift was daytime from 8:00am to 3:00pm. At no time in these two occasions plaintiff had accepted said position as falsely asserted by defendant in its motion for summary judgement at **page 5, ¶4-5**

    4.    Plaintiff had continued contacting the HR Manager's assistant, Ms. Jannifer Rego but was informed me that the company will find another work site and asked me to wait further. Plaintiff knew that the request to wait and possible offer of employment was *false* because I learned that the employer was hiring more employees from my initial application of November 20, 2003 to the date of supplemental application of December 10, 2003 (and beyond) in which employer has not looking suitable job location or position through out such periods.

    5.    Approximately in Mid of January 2004, I was informed by the employer that it had

one vacancy at Verizon Telephone company but that they will not offered me because I did not met the required qualification. I went through a series of conversation with Jennifer as I was asking her why she called me to discuss about the job that she taught that I was not qualified and asked her in return why the company did not contacted me for the other job that they offered to other employers. Ms Jennifer responded question by question and said .... How do you know?. When I ask to talk to Ms. Downes, I was informed that she was out for the day to recruit employees but unable to tell me where the recruitment center was.

6. In January 2004 I was employed by Security System Inc., now merged with others and called Allied-Barton Security system inc. Even after having a concierge job at cited company with better wage and working conditions than what Cognisia can offer, plaintiff has keep calling Cognsia to learn the true reason of its denial of employment. Until plaintiff had filed the EEOC charge or a little over six months, Cognisia has not contacted plaintiff to offer employment but hired three hundred sixty four (364) employees see Mr. Feo's Memo. At **EXHIBIT – D** at ¶ 3.

7. Cognsia characterized *its only one effort* to offer employment for the plaintiff as a "good faith effort" as if any reasonable mind can construe such effort as genuine . See Defendant's motion for summary judgement at page 6, ¶1.

8. As a result of plaintiff's understanding of the employer's deliberate act of discrimination and exhausted of all my effort to get acceptable reasons for the denial of such employment, I have filed charge of discrimination with the EEOC/MCAD. On June 12, 2004, plaintiff requested the EEOC to delay the progress of the case as I was to leave the United States for Ethiopia and stay there approximately for 3-4 months. By ignoring plaintiff's request, the EEOC

4

had dismissed the complaint and issued the Rights To Sue Letter on July 28, 2004. On September 30, 2004, plaintiff returned from my overseas trip to the United States. On October 18, 2004, plaintiff filed this complaint and an amended complaint on December 20. 2004. Defendant answered plaintiff's complaint on January 30, 2005.

9. Subsequent to the defendant's answer to the plaintiff's complaint, the parties submitted a joint discovery plan but the court had shortened the time and referred the case for mediation. Unable to agree but litigate further, parties had continued discussing discovery requests at each other's end. In her letter to plaintiff on June 10, 2005 see, **EXHIBIT – E** defendant had *fabricated* a computer printout and produced to plaintiff alleging that the document produced was left inadvertently from producing to the plaintiff's request for production of document. Plaintiff immediately called back to counsel and ask to what request number the document she produced. Counsel's answer was that it was for plaintiff's request of for production of documents of No. 15. see plaintiff's request no. 15 at **EXHIBIT- F** and compare with the document produced.

10. Four days latter defendant had filed its Motion for Summary Judgement before the court ruled on defendant's motion for compelling discovery. This motion in opposing Defendant's Motion for Summary judgement is followed by putting the parties' position statement as concisely as possible here below indicated below:

DEFENDANT'S POSITION:

Defendant Cognisa held the position that it had a job fair at the Massachusetts Division of Carrier Service on November 20, 2003and (among other candidates) interviewed plaintiff for a security guard position. Furthermore, defendant stated that the plaintiff's preferred working condition was to work in any work site accessible by public transportation, and between the work hours of 3:00pm–11:00pm .Defendant stated that it make one effort to work at R&D Corporation and plaintiff allegedly accept such offer but later rejected. Defendant also stated that they did not know

plaintiff's leg problem at the time of his interview with the Human Resource Manager, and did not perceived plaintiff as a disabled person nor was informed as to plaintiff's leg problem. As a result of these circumstances the company did not offered plaintiff any position. Defendant also stated that the employer did not hire *all* applicants who submitted employment application on November 20, 2003. *Therefore, defendant concluded that no discrimination exist in the absence of hiring others who are outside the plaintiff's race, color, national origin and/or disability.*

PLAINTIFF'S POSITION

Plaintiff' submitted employment application to the employer at the Massachusetts Division of Carrier Services on November 20, 2003 and was interviewed by the Human Resource Manager, Ms. Downes. In the interview, *as well as in my employment application I have indicated* that I have resigned from my former employer for reason of my leg problem and, therefore was interested to work in a concierge (sitting down type of job) where Public Transportation is accessible and preferably at the second shift (i.e., 3:00pm-11:00pm). Plaintiff further learned that the employer continued hiring other employees including those applicant who were hired between the plaintiff's initial employment Application of November 20, 2003 to and beyond. *With reason and fact, therefore, plaintiff concluded that the employer's action in not considering seriously my application for employment was because of discrimination on ground of my race, color (black) national origin (Ethiopian) and discrimination on ground of perceived disability.*

## I.  STANDARD OF REVIEW FOR SUMMARY JUDGEMENT.

Summary Judgement is appropriate where the submission of the movant's record indicate that no genuine issue of material fact stand in the way of judgement as a matter of law. Fed. R. Civ. P. 56 (c), Anderson vs. Liberty Lobby, Inc. 377 U.S. 242, 106 S.Ct. 2503, 91 L. Ed. 2nd, 202 (1996). The party seeking summary judgement has the burden of showing that no such issue of material fact exist. Once this burden is met, the burden shift to the nonmovant to produce evidence that shows that genuine issue of material fact still remains. Randall vs LaSalle Telecommunication Inc. 876F.2nd 563. 578 (7th Cir. 1989). The nonmovant "may not rest upon mere allegation', but must set forth specific showing that there is a genuine issue for trial". Fed. R. civ. P. 56(e)., see also Celotex Corporation vs. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2nd 265 (1986).

6

During this process, the party opposing summary judgement must be given the benefit of all favorable inference which can be reasonably drown from the underlying facts. DeValk Lincolin Mercury vs. Ford Motor Company. Co Inc. 811 F.2nd, 326, 329 (7th cir. 1987) In ruling on a summary judgement motion, we must consider the pro se's access to proof, his understanding of the legal issue involved, his ability to express himself and the nature of his claim. Madyun vs. Thompson 484 F. Supp. 619 at 620 (C.D. ILL 1980) As the summary judgement standard demand, fact should be taken in light most hospitable to the appellant, indulging all reasonable inference in their favor, see Conword, 171 F.3rd. 12, 17 (1st Cir. 1999)

Applications of these standards to the parties' dispute on this case is appropriate and, therefore, defendant should NOT be entitled to the grant of summary judgement against plaintiff.

**ARGUMENT**

### II.   COGNSIA IS NOT ENTITLED TO SUMMARY JUDGEMENT ON PLAINTIFF'S FAILURE -TO - HIRE CLAIMS.

Defendant can not prevail at this stage of an employment discrimination suit because it has not shown that there is no material issues of fact in dispute as to whether plaintiff satisfies his prima face burden of proof or whether the proffered reason for the plaintiff's denial of employment were not pretext. See Generally McDonald – Douglas Corp. vs. Green, 411 U.S. 792 (1973). The first Circuit has described the prima facie case as a "small showing" that is "not onerous" and is "easily made", see Kosereis vs. Rhode Island, 331 F 3rd 207, 213 (1st Cir. 2003).

As for the showing of pretext, this court must determine "whether the ....evidence proffered by [the plaintiff], together with all reasonable inference which may be drawn in h[is] favor, rise a

7

genuine issue of fact as to whether [his] termination ….[was] motivated by [race] discrimination" see <u>Santiago-Ramos vs. Centennial P.R. Wireless Corp</u>. 217 F.3rd. 46, 54 (1Cir.2000) (internal citation and quotation omitted). Thus Summary judgement must be denied if the record indicate sufficient competent evidence from which a reasonable jury could (although it need not) infer that the employer's claimed reasons for terminating [the] employment were pretextual and that the decision was the result of discriminatory animus, see <u>Dominguez-Cruz vs, Suttle Caribe, inc</u>. 202 F.3rd 424, 431, (1st Cir. 2000) (internal citation and quotations omitted) Finally this court must "exercise particular caution before [sustaining] summary judgement for employers on such issues as pretext, motive and intent" <u>Santiago-Ramos</u>, 217 F. 3rd. at 54, citing <u>Hodgens v. General dynamic Corporation,</u> 144 f.3rd. 151, 167 (1st cir. 1998)

    The issue giving rise to a claim of pretext dealt with whether the plaintiff was given the same chance like other employees who attained suitable position (guard) and location without regard of prohibited practices. Here as if plaintiff has not worked elsewhere in similar job category, defendant has used the plaintiff's leg injury (or problem) as a pretext to deprive employment opportunity. This court should infer defendant's pretext for not offering such job not only from its failure to attempt to find more than one of its client company, (R&D) but it even did not attempt to contact me for other position despite hiring of 364 employees from the date of the plaintiff's submission to the date of filing charge of discrimination with the EEOC. In this respect, had discrimination was not the *true* reason for plaintiff's deprivation of employment, defendant would have easily found suitable position without problem. In its summary judgement motion defendant had argued that because they had not hired any other candidates than Plaintiff's race or country of origin, it concluded that no discrimination has existed. The Statement is false since defendant had hired <u>Carter Jeffrey</u> (Black) on 11/23/2003,

8

Tucker Kenneth J (White) on 11/13/2003, Centron Jorge L. (Spanish) on 11/26/2003; see lists of name at **EXHIBIT – G** of page  D00001. 1/ and D's answer to Plaintiff's Interrogatory No. 11 of **EXHIBIT – H** of p. 7.

## PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITY ACT

A.  Plaintiff Has Established a Prima Face of Case of Disability Discrimination

Defendant alleged that plaintiff is not disabled because in my deposition I have testified that I am not "disabled" or "handicapped". Furthermore, it argued that to make out a prima facie case of disability discrimination, plaintiff must established that (1) he must be "regarded" by defendant as disabled, (2) was a qualified individual who was able to perform the essential function of the sought –after job either with or without reasonable accommodation; and (3) has suffered an adverse employment action because of his disability. See Def's Memorandum at p. 8, section A. The central argument held by defendant is that it did not "regard" plaintiff as disabled. It seems that the plaintiff's claim of " perceived" disability has been substituted by "regard" - the terminology of which  may not materialized as the argument was not a play in words. Here,

---

1/ IN ADDITION, *while all the above employees were hired in the month of November 2003, other employees were also hired in the month of December 2003 (while my November 20, 2003 and December 10, 2003 employment application was under pendency). This include* Alex M. Lambert *(B) hired on 12/12/2003,,* Socolove Nicole *(W) hired on 12/12/2003,,* Sarpee James *(B)hired on 12/17/2003,* Haskel Steven K *(W) hired on 12/12/2003,* Keleta Teweldeberhan *(B) hired on 12/12/2003 . see* **EXHIBIT -I** *of page 8 and Defd;s Answer to the Pltf's Interrogatory No. 11 at* **EXHIBIT - H** *.By listing the name of these employees, plaintiff is not asserting that* **ALL** *these employees were hired as a result of November 20, 2003 Job fair. Rather, I am arguing that  all these employees were hired while my application was set aside. This in effect also meant that the discrimination was not committed when employment application* **submitted** *but when the employer* **make** *the decision. Same is true whether their application was submitted prior to the submission of plaintiff.*

*Plaintiff is in dispute  as to the number of candidates for the November 20, 2003 and December 10 2003 recruitment secessions the candidates were* not *only the plaintiff himself,(*Begashaw Ayele*),* Elvin Malicbegovic, Agbai Agu Ohwuka *znd Dahn Lea* but *many other candidates interviewed by Ms. Downes., the former HR Manager.*

Defendant unequivocally informed by plaintiff about my leg problem and was understood not only from my employment application but also in my conversation with HR Manager during the interview. at the Job Fair. Now in the 11 hour of the day, defendant can not claim that they did not "regarded plaintiff as a person with such problem. Let me take the court to the point of defendant's inconsistent statement to discredit them once more, see below:

> Ms. Downes informed charging party that if a position become available accommodating his scheduling needs and *his limited ability to travel he would be notified.* (emphasis added) See Mr. Aaron Feo's memorandum to the Enforcement supervisor of the EEOC, at **EXHIBIT - D** page 2

In this regard, the court should deny defendant's motion because not only it perceived plaintiff's ability to travel a limited distance but they cannot now also argued that they do not regard plaintiff as a disabled applicant. Such "inconsistency and implausibility" is what the a non-movant party need to establish genuine issue of material fact for trial

### 1.   Cognisa had "regarded" plaintiff' as disabled

Counsel had submitted numerous pages of argument on the plaintiff's "perceived disability" claim because she had found a seemingly similar but unrelated memorandum of decision from other court which decided on the issue of "regard disability". The notion "regarded as disabled" was the phrase used by congress because by enacting the law congress wanted to *include* all those who are disabled one way or another but the public doesn't treated or view them as disabled partly because of the severity of their disabled status differed. However the real perception of regard disability is the general "understanding" of the disabled person's problem by those who are in authority, for example, by people in the Human resource Department. See example from my recent

employer's action at **EXHIBIT – J** . Similarly, plaintiff was regarded by Cognsia as the disabled person as the Memorandum of Mr. Aaron Feo's confirmed that assertion, see **EXHIBIT D** , ¶ 2-3 of page 2 . If defendant had doubt as to Plaintiff's disability, then they should have requested plaintiff medical proof as the plaintiff's recent proof of examination submitted to my current employer indicated at **EXHIBIT – K**. Rather, defendant choose to argue at this last moment by denying that they don't regard plaintiff as disabled person.

      2.      **Plaintiff is a "qualified" individual with a disability Clue under ADA.**

Because the defendant understands of the plaintiff problem was different than what the law required to accommodate employee's problem, the defendant's different understanding alone will not disqualify or preclude plaintiff from legal remedy under the ADA law. As the court knows very well, the ADA law only defined "**disability**" with respect to an individual as:

> *(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual (B) a record of such impairment; or (C) being regarded as having such impairment*, see- 42 U.S.C. ¶12102(2)

Plaintiff satisfy all the three elements of the ADA law as indicated below in that :

1. I was unable to perform similar job responsibility at my former employer (and resigned as a result of it. And such physical impairment not only caused me to reject jobs already offered but also prohibited me not to make physical exercise as recommended by my medical doctors.

2. I was not required by defendant to present medical record which I could have done so had request was made as soon as employer contemplate to offer me one, and,

3. Defendant has **no** reason not to regard plaintiff as having physical impairment specially when I informed them that I have resigned from my former employer and similarly indicated such in my employment application. This argument is true even if plaintiff's problem is false (which is not) because, alike the standard for summary judgement, all must be assumed to be true until proven to the contrary

      3.      **Cognisa had refused to hire plaintiff based on perceived disability**

It is undisputed that plaintiff was offered a security guard position that substantially

affect my health and by offering such position defendant can not say that the position offered was a non-pain-causing position. Furthermore, defendant had presented a fabricated document showing that nobody was hired as a result of the November 20, 2003 job fair including plaintiff. As a result of this, defendant had attempted to persuade the court that plaintiff was not adversely discriminated. This argument has been characterized by defendant as logical. Nothing has been argued in the case as logical. The defendant's argument was a pack of lie shipped to this court as *logistic* not "logic."

As stated earlier at page 9 of 1st paragraph, defendant had hired several individuals as my application was set aside for no other reason but discrimination . To mask discrimination, however, defendant had fabricated false document that even not does not included my friend's name who was one of the candidate who submitted employment application with the plaintiff. To sum up, it clear that defendant had not hired plaintiff  not because it couldn't find suitable position but it wanted to exclude plaintiff by pretextual reason

**B.    Plaintiff Can Establish A Prima Facie Case of Race Color and National Origin Discrimination**

As stated in the preceding paragraph (page 9 of 1st paragraph) the employer had hired several employees outside plaintiff's color, race and national origin for no other reason but discrimination. Plaintiff, therefore, not only satisfy the prima facie element of discrimination under Title VII but prove such act of discrimination.

**1    Plaintiff did suffer an adverse employment action**

Similar to the above reasoning, plaintiff can prove an adverse employment decision not only that employer offered employment to others  but plaintiff was deprived the same job because,

among other reasons, defendant perceived plaintiff as a person who cab not carry the job responsibility whether the job require reasonable accommodation or not.

    2.    **Plaintiff Can demonstrate that the security officer position was given to someone outside of his protected class.**

It is true that plaintiff testified in my deposition that I did not know the identity of all applicants that the employer preferred over plaintiff except saw group of candidates who submitted employment application at the Massachusetts Division of Carrier Service on November 20, 2003. (see Pl's. Dep. 143-144, Defendant's Memo. For Summary Judgement at page 13.) As recently as June 23, however, plaintiff's further investigation proved that all applicant(s) hired were not from plaintiff's national origin (Ethiopia) color or race. see page 9, 1st paragraph.

    C.    <u>Cognisa Has NOT Articulated Non-discriminatory Reason For its Adverse Decision</u>

Defendant has not only failed to *articulate* legitimate, non-discriminatory business decision but it also failed to *proved* that its action in preferring one race/national origin over the other was consistent with what the law mandate. As stated above, (page 9, 1st Paragraph) defendant had offered several position for candidates by excluding plaintiff's application from consideration and finally offered me one that I will not take it under given circumstances.

Defendant further argued that they had four potential candidates (including plaintiff) but claimed that they had not hired any one of them. Assuming that defendant had only four potential candidates (which is not true) they have not proved that all candidates they rejected had similar leg problem to that of the plaintiff. In fact employer has not given any reason at all for not considering all of the candidates except the one white candidate who was under the age of 21.

13

Further, in presenting such fabricated and false document, defendant does not stated any reason why they kept (if it were kept as a business record) the candidate's log for which they have not hired them and therefore are not in the payroll, Defendant did not produce the actual copy of the candidate's employment application so that other facts would be discovered from such application. In addition, unless it was prepared to mask discrimination, it is very unlikely that the employer could keep any candidate's log one year later and in the time of litigation.

### D. Plaintiff Can Point to Defendant's Pattern of Pretext in this case.

Defendant has several pretexts in denying plaintiff and others who equally was denied, including my friend, (Aweke Alemayehu, Ph.D.) and the pretextual reason(s) include:

(a) defendant's offer of employment for the plaintiff knowing that I was not willing to accept,

(b) false promises to explore other suitable site for the plaintiff, but never try one and,

(c) continued employing of other employees numbering up to 364 to which I was not considered while my employment application was under pendency,

(d) failure to consider me for the position at defendant client's company, (Verizon telephone, Inc.) by reasoning that the position required greater educational and law enforcement experience ... 2/

---

2/ While these pretexts are the factor of plaintiff's denial of employment, defense counsel, instead of justifying the action of its client, had jumped out of the fence of the real issue and attacked plaintiff by characterizing my decision to challenge discriminating companies as a result of " questionable pattern of litigiousness". Plaintiff only understand such argument as nothing but a crocodile tear. If "questionable pattern of practice is an issue necessary to discuss here, then it is the counsel's unprofessional practice and character that should be a prime targeted. Here is WHY: (1) she <u>refused</u> to reproduce D's Exhibit of the deposition to the plaintiff until two days before she filed defendant's summary judgement (2) she <u>aided</u> defendant in the fabrication of false documentary evidence and produced to plaintiff as "inadvertently" excluded document from D"s response to the P's Request for Production of document no. 15; (3) She <u>misrepresented</u> P's statement of fact in the deposition to support D's Position statement for Mediation process, (4) she supplied "D's Reply" to the pending motion the one day after the HEARING was conducted thus deprived plaintiff "not to know" what point of argument she had filed with the court, (5) Conspired with the third party to obstruct discovery request and (6) always had a "go alone" tendency and practice to contact staff member of the court without the consent of plaintiff. Further defendant alleged that plaintiff's lawsuit experience from age 11 manifest questionable pattern without indicating what civil action plaintiff lost in the process. Whether the court believed her argument or not, still it is plaintiff's position to challenge the wrong doer in the court of law rather than to take the law in one's own hand

## SUMMARY OF CONCLUSION

Defendant had had discriminated plaintiff with an *intention* to do so since the action was not an ordinary mistake committed for lack of decision making skill or other legitimate, non – discriminatory business reasons. Particularly defendant had not explored other suitable location for the plaintiff except one location while it hired more than three hundred employees all this because for discriminatory reasons Defendant deliberately limited its search for a non-pain-causing position only at one location (R&D Corp.) while it had hired 364 employees within approximately six months period of time.

. Moreover, after defendant's Human Resource Manager had *"informed charging party that if the position becomes available accommodating his scheduling need and his limited ability to travel he would be notified"* (emphasis added)**EXHIBIT – D,** p.2 later in this stage of summary judgement it had denied such concession and hold a position that they **did** *not* regarded plaintiff as a person with such problem. In addition, defendant shamelessly informed this court that it did not hire any candidate for the position that plaintiff applied for. Defendant are wrong in attempting to convince the court that it had offered plaintiff "two positions" that require continuous walking and to characterize such limited effort to as a "good faith effort".. Defendant argument has no merit and, therefore, as explained above, defendant's motion for summary judgement should be denied with prejudice as there is no way to prove the falsification of record and/or justify its action in doing so .

## PLEASE NOTE:

This document submitted to this court as a "Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgement" has been prepared *without* taking deposition from

defendant and other third party witnesses. Despite the court's recent denial to my request to file <u>cross-motion for compelling discovery</u> from defendant, I was attempting to discover some information from a third party through subpoena. Due to conspiracy between Cognisa and its client company, Compliance Network, I was denied the basic information that I sought therefrom. (see **EXHIBIT – L** . Because the deadline of this opposition motion is on July 15, 2005, plaintiff had filed opposition motion at this time with a plan to supplement if and when all other discovery effort met. On July 28, 2005, plaintiff had been permitted by Judge Marianne B. Bowler to take the <u>deposition</u> from defendant until mid-August of 2005. <u>Plaintiff, therefore, request the court to put a stay until I supplement this opposition with additional information from the deposition.</u>

<u>Dated July 6, 2005</u>

Respectfully Submitted,

*Begashaw Ayele,* Pro Se

## CERTIFICATE OF SERVICES

This certify that the foregoing document titled " Plaintiff's Opposition to the Defendant;s Motion for Summary Judgement" has been served on defense counsel by placing in the U.S Mail postage prepaid to the following address to : Bronwyn L. Roberts of DUANE MORRIS, LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210

Sincerely,

*Begashaw Ayele,* pro se