UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BEGASHAW AYELE, PRO SE,
    Plaintiff,

v.

CIVIL ACTION NO.
04-12217-PBS

COGNISA SECURITY COMPANY, INC.,
    Defendant.

**REPORT AND RECOMMENDATION RE:**
**MOTION OF DEFENDANT COGNISA SECURITY, INC. FOR SUMMARY**
**JUDGMENT**
**(DOCKET ENTRY # 27)**

**October 17, 2005**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendant Cognisa Security, Inc. ("defendant").[1] (Docket Entry # 27). Plaintiff Begashaw Ayele ("plaintiff") opposes summary judgment. After conducting a hearing on September 15, 2005, this court took the motion (Docket Entry # 27) under advisement.[2]

---

[1] In its answer to the complaint, defendant notes that plaintiff Begashaw Ayele incorrectly identifies the company as "Cognisa Security Company, Inc." Defendant nonetheless responds to the complaint and addresses the substantive merits.

[2] At the close of oral argument at the hearing, defendant's counsel advised this court that defendant was renewing its requests for costs in connection with discovery matters. The oral motion is denied without prejudice. Defendant should file a written motion with a supporting memorandum citing legal authority for an award of costs, see LR. 7.1(b)(1), within ten days of the date of this opinion in the event it continues to seek costs.



## PROCEDURAL BACKGROUND

The amended complaint alleges a violation of the: (1) Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"); (2) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and (3) "similar [sic] applicable State laws." (Docket Entry # 4). Plaintiff alleges these violations were based on his race, color, national origin and disability. (Docket Entry # 4, p. 3). Defendant moves for summary judgment on all counts. (Docket Entry # 28).

## FACTUAL BACKGROUND

Plaintiff is an African-American male of Ethiopian descent. Defendant is an Atlanta based corporation with a Boston office that provides commercial security service. (Docket Entry # 28, Ex. A, ¶ 3). On November 20, 2003, defendant held a job fair at the Massachusetts Division of Career Services in Boston. (Docket Entry # 28, Ex. C, pp. 117-118). Nicole Downes ("Downes"), the Human Resources Manager for defendant, was responsible for interviewing applicants for defendant. (Docket Entry # 28, Ex. B, ¶ 2). Four people applied, including plaintiff, none of whom was hired as a result of the fair. Of the four applicants, three were black and one was white. Although plaintiff asserts more than four potential employees applied, he provides no evidence to support

2

this assertion. (Docket Entry # 33, pp. 9 & 13). Plaintiff does not know the race, gender or national origin of any of the other people who attended the job fair. (Docket Entry # 28, Ex. C, p. 144).

Plaintiff's employment application stated that he left his former employer, Pinkerton ("Pinkerton"), at least in part because plaintiff had a problem in his leg due to long walks. (Docket Entry # 33, Ex. B). He did not state on his application that he had a disability. (Docket Entry # 33, Ex. B).

During his interview with Downes, plaintiff informed her of an existing leg injury. Plaintiff advised Downes that he had resigned from his job with Pinkerton due to Pinkerton's "failure or inability" to provide him with a non-walking position. (Docket Entry # 33, Ex. A; Docket Entry # 33, Ex. B; Docket Entry # 33, Ex. C). Plaintiff requested of Downes a job that (1) was close to public transportation, (2) did not require working on Sundays, and (3) could be scheduled from 3:00 p.m. to 11:00 p.m. (Docket Entry # 33, Ex. A; Docket Entry # 28, Ex. B, ¶ 4; Docket Entry # 28, Ex. C, pp. 123-124 & 127). Downes told plaintiff she would notify him if a position which could accommodate his scheduling request and his "limited ability to travel" became available. (Docket Entry # 33, Ex. D, p. 2). Plaintiff submitted his application on the day he met with Downes. (Docket Entry # 28, Ex. C, p. 123).

The majority of defendant's security jobs require that employees walk. The job description for the position for which plaintiff applied lists essential functions of the job, including the physical requirement that "the employee is frequently required to stand, walk [and] sit . . .." (Docket Entry # 28, Ex. A, Ex. 1; Docket Entry # 33, Ex. D). Plaintiff submits nothing to contest this fact.

At his deposition, plaintiff stated that he is not actually disabled (Docket Entry # 28, Ex. C, p. 174), but now asserts that his leg injury would satisfy the requirements of the ADA under 42 U.S.C. § 12102(2)(a). (Docket Entry # 33, p. 11). As evidence, plaintiff submits a note from his doctor stating: "Please consider allowing [plaintiff] light duty (or duty that allows sitting down)" until the doctor could make an evaluation of plaintiff. Additionally, plaintiff submits a note from an employer stating it was awaiting confirmation from a doctor of plaintiff's "disability." The note also states that although plaintiff was experiencing pain and swelling in his legs, a position existed in which plaintiff could "walk and sit" and for which plaintiff had expressed a preference. (Docket Entry # 33, Ex. J). Plaintiff is able to do "reasonable exercise." (Docket Entry # 28, Ex. C, p. 172).

In November 2003, defendant hired Jeffrey Carter who is black, Kenneth Tucker who is white, and Jorge Centron who is Spanish. (Docket Entry # 33, Ex. G; Docket Entry # 33, Ex. H,

No. 11, p. 7). Plaintiff also knows the racial background of several other employees hired between November 2003 and July 2004. (Docket Entry # 33, Ex. G). Between November 20, 2003 and July 20 2004, defendant hired 364 employees, 33.5% of whom were African-American. (Docket Entry # 33, Ex. D, p. 3).

On December 9 2003,[3] Downes contacted plaintiff by telephone and offered him a job at R&D Associates ("R&D"), a client company of defendant. The offered position was for the hours of 3:00 p.m. to 11:00 p.m. Plaintiff nonetheless refused this offer because no public transportation was available after 11:00 p.m in the area of the assignment. (Docket Entry # 33, p. 3; Docket Entry # 28, Ex. B, ¶ 5; Docket Entry # 28, Ex. C, pp. 165-166). Plaintiff spoke with a Sudanese employee of defendant who informed plaintiff that he walked 1/4 mile every hour at R&D. This information provided an additional reason for plaintiff's refusal to accept the position. (Docket Entry # 33, pp. 3 & 8).

On December 10, 2003, plaintiff met Jennifer Rego ("Rego"),[4] the Office Administrator, to whom he showed his

---

[3] The dates on which Downes telephoned plaintiff are in dispute. Both parties agree, however, that Downes contacted plaintiff at least twice offering him two separate jobs in early December 2003.

[4] When plaintiff first met Rego is unclear. According to plaintiff's deposition, Rego was at the job fair. (Docket Entry # 28, Ex. C, p. 127). But, according to plaintiff's statement of facts, he "met" Rego on December 10, 2003. (Docket Entry # 33, p. 2).

5

letter of request for reasonable accommodation and his letter of resignation from Pinkerton. (Docket Entry # 33, p. 2; Docket Entry # 33, Ex. B; Docket Entry # 33, Ex. C). The letter of resignation did not mention plaintiff's potential disability. (Docket Entry # 33, Ex. C, p. 1). Plaintiff's request for reasonable accommodation depicts a leg injury from high school and also states that he would have declined his current position if he knew it had required standing or walking. (Docket Entry # 33, Ex. C, p. 2).

On December 10, 2003, Downes offered plaintiff the same position as she had previously offered, but for the hours of 8:00 a.m. to 3:00 p.m. Plaintiff asserts that he did not accept this job either. (Docket Entry # 33, p. 3). Defendant cites Downes's deposition to contend that plaintiff initially accepted the position, filled out paperwork, and later declined the position. (Docket Entry # 28, Ex. B, ¶ 6). Downes informed plaintiff she would continue to look for positions for plaintiff. (Docket Entry # 33, p. 3; Docket Entry # 28, Ex. C, ¶ 7). On December 12, 2003, Rego told Downes about plaintiff's reasons for leaving his old job as stated in his employment application. (Docket Entry # 33, Ex. D, p. 2). In January 2004, Rego informed plaintiff of a job at Verizon for which he was not qualified. (Docket Entry # 33, pp. 3-4). Plaintiff was not offered another position by defendant. (Docket Entry # 33, p. 4; Docket Entry # 28, Ex. B, ¶ 8).

6

On July 19, 2004, Aaron Feo ("Feo"), Field Human Resources Manager for defendant, submitted a response to the request of the Equal Employment Opportunity Commission ("EEOC") for a statement of position on plaintiff's allegations of discrimination. (Docket Entry # 33, Ex. D).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); National Amusement, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Cochran v. Quest Software, 328 F.3d 1, 6 (1st Cir. 2003). A "genuine" factual issue exists where the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." National Amusement, 43 F.3d at 735 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986)); accord Cochran, 328 F.3d at 6. A "material" fact "means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 428 (1st Cir. 1996); accord U.S. v. One

Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992); Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc., 332 F.3d 6, 13 (1st Cir. 2003).

Disputed facts and reasonable inferences are drawn in favor of the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. at 248; Mullin v. Raytheon Co., 164 F.3d 696, 698 (1st Cir. 1999); Gulf Coast Bank & Trust Co. v. Reder 355 F.3d 35, 39 (1st Cir. 2004).

## DISCUSSION

I. Summary Judgment Record

Defendant contests (Docket Entry # 40) plaintiff's opposition to summary judgment partly on the basis of plaintiff's submission of unauthenticated exhibits in his opposition brief (Docket Entry # 33). In accordance with Rule 56(e) of the Federal Rules of Procedure ("Rule 56(e)"), a document submitted in the course of summary judgment "must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2722 (1983); accord Carmona v. Toldeo, 215 F.3d 124, 131 (1st Cir. 2000).

In the case at bar, plaintiff submitted six exhibits that defendant contests on the basis of their admissibility: (1)

8

plaintiff's employment application (Docket Entry # 33, Ex. B); (2) letters from plaintiff to Pinkerton (Docket Entry # 33, Ex. C); (3) a list of defendant's employees (Docket Entry # 33, Ex. G); (4) a letter from the EEOC to plaintiff (Docket Entry # 33, Ex. I); (5) a letter from one of plaintiff's employers to plaintiff (Docket Entry # 33, Ex. J); and (6) a letter from plaintiff's doctor (Docket Entry # 33, Ex. K). The latter five exhibits have not been authenticated with affidavits by someone with personal knowledge of them.[5] These exhibits, therefore, do not conform with 56(e). Carmona, 215 F.3d at 131; accord Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 2000); see Schultz v. Young Men Christian's Ass'n of U.S., 139 F.3d 286, 289-290 (1st Cir. 1998) (finding a therapist's letter which was not attached to an affidavit from therapist was inadmissible). Plaintiff therefore failed to properly present his exhibits. As such, they are stricken from the summary judgment record.

For reasons set forth below summary judgment is appropriate if the foregoing exhibits are stricken from the record. That said, even assuming, arguendo, that plaintiff properly submitted the foregoing exhibits in opposition to the motion for summary judgment, summary judgment on all counts remains appropriate.

II. ADA Claim

---

[5] The inclusion of the employment application in the group of documents contested appears to be an oversight given the fact that defendant included the employment application among its submitted documents. (Docket Entry # 28, Ex. C).

9

Case 1:04-cv-12217-PBS    Document 45-1    Filed 10/17/2005    Page 10 of 20

Plaintiff asserts that defendant violated the ADA by failing to hire him because of his leg injury. In order to succeed on an ADA claim, the plaintiff must show that he: "(1) suffer[s] from a disability as defined by the statutes; (2) was otherwise qualified to perform the essential functions of his employment with or without reasonable accommodation; and (3) was subject to an adverse employment action." Benoit v. Technical Manufacturing Corp., 331 F.3d 166, 175 (1st Cir. 2003); accord Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996); Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002); 42 U.S.C.A. §§ 12101 et seq.

Turning to the first prong, a disability under the ADA is "a physical or mental impairment that substantially limits one or more of the major life activities of [the plaintiff]." 42 U.S.C. § 12102(2)(A); accord Benoit 33 F.3d at 175. To qualify as disabled, a plaintiff may also show that he was regarded as disabled if he can demonstrate his "employer regarded him as disabled *within the meaning of the ADA.*" Id. at 176 (quoting Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002)) (emphasis in original).

Working constitutes a major life activity for the purposes of this test. 29 C.F.R. § 1630.2(i); Carroll 294 F.3d at 239, n. 7; but see Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-492 (1999) (recognizing that "[i]f an individual is substantially limited in any other major life activity, no determination should

10

be made as to whether the individual is substantially limited in working") (citing 29 C.F.R. pt. 1630, App. § 1630.2(I)). To determine whether a person is substantially limited in his or her working capacity, he or she must be:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(i); Lessard v. Osram Sylvania, Inc., 175 F.3d 193, 197 (1st Cir. 1999).

In the case at bar, plaintiff asserts that he was in fact disabled, despite earlier testimony that he was not. Plaintiff submits as evidence his doctor's note and the fact of his resignation from Pinkterton. Based on these documents, however, plaintiff made no assertion that he is prevented from working at all, only that he is prevented from working at jobs that require more than "light" walking. This assertion is inadequate for demonstrating a disability under the ADA. See Benoit 331 F.3d at 176 (finding that where the plaintiff was advised by doctor to avoid "heavy lifting" indicated an impairment, not a disability); see also Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003) (holding that "[i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment") (quoting Toyota Motor Mfg., Ky., Inc., v. Williams, 534 U.S. 184, 198

11

(2002)).

Plaintiff also asserts that he is regarded as disabled in order to satisfy the first prong of the ADA claim's requirements. Just as with a disability claim under the ADA, in order to prove that a potential employer regarded the plaintiff as disabled the plaintiff must show that the potential employer regarded him as "substantially impaired in a either a class of jobs or a broad range of jobs." 42 U.S.C.A. § 12102(2)(c); Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004); accord Murphy v. United Parcel Service, 527 U.S. 516, 521-522 (1999); Benoit, 33 F.3d at 176; Sutton 527 U.S. at 491-492.

At his deposition, plaintiff states that he told Downes at the job fair that he had a leg injury. Downes, however, states in her declaration that she did not perceive plaintiff as disabled. Plaintiff therefore provides insufficient *evidence* to demonstrate that Downes regarded him as disabled. See Lessard 175 F.3d at 197-198 (finding that the plaintiff had not established that the defendant regarded him as disabled although a third-party hired the plaintiff for a certain job with the defendant which it was later determined the plaintiff could not perform).

Plaintiff also points to his employment application, the doctor's note, and the employer's note as evidence that he is regarded as disabled. Taken together, all three documents demonstrate that plaintiff was unable to perform more than "light

12

duty" and incapable of long periods of walking. Indeed, plaintiff himself acknowledges that he is capable of some exercise at the work place. Defendant, therefore, would have regarded plaintiff not as unable to work at all but only unable to work at the one particular job from which he resigned. See Lessard 175 F.3d at 197-198 (where worker with hand injury submitted no evidence he was regarded as unable to perform more than the specific job of spot welder, summary judgment was appropriate); Tardie v. Rehabilitation Hosp., 168 F.3d 538, 542 (1st Cir. 1999) (holding that an employee unable to work more than 40 hours per week was not perceived to be "substantially limited in the major life activity of working"); accord Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 723 (2nd Cir. 1994). Thus, with these documents, plaintiff fails to set forth sufficient facts that defendant regarded him as disabled.

Plaintiff also points to Feo's letter to the EEOC as evidence that defendant regarded him as disabled. The letter, however, in conjunction with plaintiff's employment application, demonstrates that plaintiff had not indicated in his application to work for defendant that he had a disability at the time he interviewed with Downes. Plaintiff thus did not adequately demonstrate a perceived disability. Cf. Benoit 331 F.3d at 177 (holding that the plaintiff had not indicated he was disabled within the meaning of the ADA where he did not indicate he had an ongoing condition); Whitlock 345 F.3d at 46 (finding that the

13

plaintiff's concession that he was able to perform his duties indicated he was not disabled). In sum, plaintiff fails to set forth sufficient facts creating a genuine issue of material fact under the first prong of the ADA claim.

Assuming, arguendo, plaintiff did in fact have a disability, plaintiff still fails to satisfy the other requirements of an ADA claim for purposes of summary judgment. Turning to the second prong, whether the person is "qualified" requires two separate inquiries: "(1) whether employee could perform essential functions of the job, and (2) if not, whether any reasonable accommodation by employer would enable him to perform those functions." 42 U.S.C.A. § 12101 et seq.; Ward v. Massachusetts Health Research Institute, Inc., 209 F.3d 29, 33-34 (1st Cir. 2000); accord Criado v. IBM Corp, 145 F.3d 437, 443 (1st Cir. 1998).

Plaintiff admits in his brief that he is unwilling to walk on patrol. He also acknowledges that his physical impairment prevented him from accepting work from comparable employers. He thus indicates that he is not able to perform the essential functions of defendant's security job. See Feliciano v. State of R.I., 160 F.3d 780, 784-785 (1st Cir. 1998) (holding that an institutional attendant at a hospital with a back injury who could not lift patients could not perform an essential function of her job and thus was not qualified); accord Laurin v. Providence Hospital, 150 F.3d 52, 58-59 (1st Cir. 1998).

14

Plaintiff also did not have the qualifications required for the Verizon job. See Calef v. Gillette, 322 F.3d 75, 86 (1st Cir. 2003) (holding that an employee is not qualified under the ADA where employee suffering from ADHD could not handle stress and therefore could not perform the job).

The inquiry therefore turns to whether defendant made reasonable accommodations to enable him to perform the essential functions of the job. Plaintiff provided no evidence that defendant failed to make reasonable accommodations for plaintiff's impairment. In fact, plaintiff concedes that defendant offered plaintiff two jobs which plaintiff then turned down. Plaintiff asserted that he refused the first job because of the walking required. Having been offered the second job, however, plaintiff refused the job on the basis of the lack of access to public transportation, not because of the nature of the work. This refusal thus does not implicate defendant in a failure to reasonably accommodate plaintiff. See Phelps v. Optima Health, 251 F.3d 21, 26 (1st Cir. 2001) (holding that employer was not required to create job-sharing arrangement to accommodate disability); Feliciano, 160 F.3d at 787 (finding that reasonable accommodation did not mean an employer was obligated to reassign an employee to a job for which she had missed her chance to bid); Fowler v. Frank 702 F.Supp. 143, 147 (E.D.Mich. 1988) (holding that where a company had provided a new job to accommodate the plaintiff's disability, employer was not

15

responsible for providing the plaintiff with a job in her location of choice); compare Marcano-Rivera v. Pueblo Intern, Inc., 232 F.3d 245, 257 (1st Cir. 2000) (finding employer failed to reasonably accommodate the plaintiff where the plaintiff, with two amputated legs, was made to go through a humiliating process of moving from a wheelchair to a special stool in front of customers). Plaintiff therefore put forth insufficient evidence to withstand summary judgment on the second inquiry under the second prong.

Turning to the third prong, plaintiff asserts that he suffered an adverse employment action. Plaintiff, however, was offered two positions and admits he rejected them. Summary judgment is therefore warranted under the third prong of an ADA claim. See LaValley v. Quebecor World Book Services, LLC, 315 F.Supp.2d 136, 146 (D.Mass. 2004) (finding that the plaintiff had not experienced an adverse employment action where plaintiff alleged nothing more than being sought out and reprimanded).

III.  Title VII Claim

Under Title VII, it is unlawful for an employer "to fail to or refuse to hire . . . any individual . . . with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e(2). Plaintiff asserts that defendant violated Title VII for failing to hire him. In

order to establish a Title VII claim, plaintiff must make a prima facie showing:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); accord St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001).

Turning to the first prong of this test, plaintiff is African-American and of Ethiopian descent. He thus satisfies the first prong. See e.g. St. Mary's Honor Center, 509 U.S. at 506 (finding that an African-American man was able to satisfy the first prong of the test). In reference to the second prong, defendant concedes plaintiff's qualification for employment in its memorandum in support of the motion for summary judgment. (Docket Entry # 28, p. 12). For purposes of summary judgment, plaintiff thus satisfies the second prong.

Turning to the third prong, as established above, plaintiff fails to establish that defendant refused to offer a job to him. By plaintiff's own admission, he chose to turn down the offered jobs. Plaintiff therefore fails to withstand summary judgment under the third prong. Cf. Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 94 (1st Cir. 2000) (holding that

17

where the plaintiffs received benefits from the defendant, they could not bring an ADA claim suing for benefits).

Even assuming, arguendo, plaintiff was able to satisfy the third prong, he would still fail to create a genuine issue of material fact vis-à-vis the fourth prong of a prima facie case of discrimination. Plaintiff admitted that he does not know who else participated in the job fair and therefore does not know who might have been offered a job. He also failed to submit any evidence that the job remained open or that it was filled by someone with similar qualifications. Although plaintiff disclosed that the racial or ethnic background for many of the 364 people was different from his own, he has not specified either for which positions they were hired or their qualifications, let alone point out someone hired in his place. Summary judgment is therefore appropriate under the fourth prong. See Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148, 154-155 (1990) (holding that although it is not necessary to specify that someone outside the protected group was hired in the plaintiff's place, the plaintiff must at least demonstrate that "employer had a continued need for 'someone to perform the same work after the [complainant] left'") (quoting Lipsett v. University of Puerto Rico 864 F.2d 881, 899 (1st Cir. 1988)); compare St. Mary's Honor Center at 506 (the plaintiff established the fourth prong of the Title VII test where he showed a white man was hired in his place). Given the deficient showings under

18

the third and fourth prongs, summary judgment is appropriate with respect to the Title VII claim.[6]

IV. Massachusetts State Law Claims

Plaintiff alleges a violation of Massachusetts state laws albeit without legal citation. Plaintiff, however, is not obligated to plead specific state statutes. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1253 (2005). The applicable state law is Massachusetts General Laws chapter 151B section 4 ("chapter 151B"). For present purposes, chapter 151B is directly comparable to the ADA and Title VII statutes and the interpretation of chapter 151B is virtually identical to the interpretation of the federal statutes. Mullin 164 F.3d at 699; Benoit 331 F.3d at 173 & 174; Carrol 294 F.3d at 237.[7] Thus, for the reasons set forth in sections II and III, summary judgment is appropriate for the chapter 151B claims. See Carroll 294 F.3d at 241 (dismissing both federal and Massachusetts disability claims under the same analysis); Benoit at 173 & 174 (granting summary judgment on a Title VII and chapter 151B claim having used one analysis for the prima facie

---

[6] It is unnecessary to address the issue of "pretext" in the Title VII claim because plaintiff failed to establish a prima facie case. See e.g. Fields v. Clark University, 966 F.2d 49, 52-53 (1st Cir. 1992).

[7] The major difference is in reference to "mitigating and corrective devices" which is not at issue in this case. Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 32 Fn 1 (1st Cir. 2001).

case of both claims).

## CONCLUSION

For the foregoing reasons, this court **RECOMMENDS**[8] that defendant's motion for summary judgment (Docket Entry # 27) be **ALLOWED** with respect to defendant's liability under all counts in the amended complaint (Docket Entry # 4).

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[8] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. United States v. Escoboza Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

20